Filed 11/18/25

VERMONT SUPERIOR COURT
Orleans Unit
247 Main Street
Newport VT 05855
802-334-3305
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-03374

| Jake Buck v. Vermont Department of Corrections |
| --- |

## FINDINGS, CONCLUSIONS, AND ORDER

In this Rule 74 appeal, appellant Jake Buck challenges a decision of the Department of Corrections to interrupt his community supervision furlough for four years, which would extend to the remainder of his current sentence. A bench trial was held on November 14, 2025. For the reasons that follow, the Department's decision is reversed and the case is remanded to the Department to perform a new case staffing.

### Findings of Fact

The following facts are based on the Agency Record and Jake's testimony at the bench trial.[1] Jake was released on community supervision furlough in December 2024 subject to conditions including Condition 4 ("I will report to my supervising officer, or designee, as required."), Condition 11 ("I will be accessible to my supervising officer, or designee, via telephone . . ."), Special Condition 15 ("I will participate in electronic monitoring as directed by my supervising officer, or designee. If I have a cell phone, I will inform my supervising officer or designee that I have a cell phone and will set up voicemail so it can be used by my supervising officer, or designee, to leave me messages. I will check my messages daily and respond as directed."), and Special Condition 23 ("I will abide by any curfew imposed by my supervising officer, or designee. My curfew is 8:00pm-8:00am.").

---

[1] At the outset of the bench trial, appellant's counsel moved to introduce several exhibits that had been filed that morning. The Department's counsel objected to Exhibits D and F, which were not part of the Agency Record filed with the court. The court's standard notice of hearing form directs that any exhibits be filed three business days in advance of the hearing. *See* Webex / Hearing Order (Sept. 29, 2025). That deadline, like any other, may be modified in advance for good cause or retroactively for excusable neglect. V.R.C.P. 6(b)(1). Here, however, admitting the extra-record material over the Department's objection would have in effect deprived the Department of its statutory right "to present rebuttal evidence, including testimony." 28 V.S.A. § 724. Given the court's caseload and limited hearing time available generally and in Orleans County specifically, the court declined to schedule a second hearing to give the Department an opportunity to respond to appellant's late-filed exhibits. Exhibits D and F were accordingly excluded (Exhibits A, B, C, and E were admitted without objection). To avoid such disputes, counsel should confer in advance of trial about evidentiary issues, in particular, when material outside the record may be offered.

Upon his release on furlough, Jake was given a GPS monitoring device. The device frequently stopped working if not charged. Jake lived in Coventry with his grandfather and cousin, both of whom were struggling with disabilities and serious health issues. Jake was a caretaker for both and did significant work in the home to maintain it in a habitable condition while he lived there. Caring for his relatives and maintaining the home was, in Jake's words, a full-time job. Jake also helped a friend build a trailer, read a lot of books, and spent time with his young daughter. Jake has a history of substance abuse and relapsed while on furlough. Maintaining sobriety was a constant struggle, but Jake ensured he was sober when he saw his daughter.

Jake stopped reporting to scheduled appointments with his supervising officer soon after his release. He missed appointments on January 21, January 24, January 27, January 28, January 29, February 10, and February 26. Jake did not call or text his supervising about any of these appointments, except for January 24 when he texted later in the day to say that he had no transportation. Jake was not at his approved residence when officers visited on February 24 at 8:21 p.m. (after his curfew), the person the officers spoke with at the residence could not confirm that Jake was still living there, Jake's GPS monitoring device had died, and Jake could not be reached by phone because the number he had given the Department was not working. The officers left a card and directed Jake to report to an appointment on February 26. Jake did not have transportation and missed the appointment. He did not contact the Department before missing the appointment, but he texted and called his supervising officer later that day. He never received a response. Jake made no further attempts to contact his supervising officer. He understood at this point that if he reported, he would likely be returned to prison.

The Department issued a return on mittimus for Jake on February 28, and a Commissioner's warrant was requested and was granted on March 10. Jake was arrested on the Commissioner's warrant at his residence in Coventry on June 16. Following his arrest, his grandfather moved into a residential care facility, his cousin relocated, and the home was condemned.

The Department issued Jake a notice-of-suspension report on June 16, which alleged violations of multiple conditions including those quoted above. A contested hearing was held on June 23. The hearing officer found Jake guilty of violating the conditions quoted above and not guilty of violating the remaining conditions.

A case staffing was held on July 30, after which the Department interrupted Jake's furlough for four years, thereby making him ineligible for furlough for the remainder of his sentence. The only statutory criteria referenced in the case-staffing decision was related to absconding. *See* AR 4. Applying the sanctions grid in the Department's Policy 430.11, the case-staffing committee found that Jake had a "high" risk score and that this was his third significant violation, and that he should therefore receive a four-year interruption. The prior significant violations the Department found were for absconding in 2021 and for failing to report and receiving new criminal charges in 2023.

Jake had submitted a letter in support of mitigation to the case-staffing committee that explained his circumstances while on furlough, including his relapse, but the letter was not referenced in the committee's decision or included in the Agency Record. The decision simply noted that the Department "has reviewed for mitigating factors" and "found no such factors persuasive in support of a reduction." AR 4.

This appeal followed.

## Conclusions of Law

"An offender whose community supervision furlough status is revoked or interrupted for 90 days or longer for a technical violation shall have the right to appeal the Department's determination to the Civil Division of the Superior Court in accordance with Rule 74 of the Vermont Rules of Civil Procedure." 28 V.S.A. § 724(c)(1). "The appeal shall be based on a de novo review of the record. The appellant may offer testimony, and, in its discretion for good cause shown, the court may accept additional evidence to supplement the record." 28 V.S.A. § 724(c)(1).

The appeal "shall be limited to determin[ing] whether the decision to interrupt or revoke an offender's community supervision furlough status was an abuse of discretion." 28 V.S.A. § 724(c)(3). An agency abuses its discretion when it "declines to exercise its discretion or has done so on untenable or unreasonable grounds." *In re McNamer*, 2024 VT 50, ¶ 18. By statute, it is an abuse of discretion to revoke or interrupt furlough for more than 90 days for a technical violation unless (1) "[t]he offender's risk to reoffend can no longer be adequately controlled in the community, and no other method to control noncompliance is suitable"; (2) "[t]he violation or pattern of violations indicate the offender poses a danger to others"; or (3) "[t]he offender's violation is absconding from community supervision furlough." 28 V.S.A. § 724(d).

On appeal, Jake argues that Department abused its discretion when it imposed a four-year furlough interruption because (i) Jake's violations did not meet the statutory definition for absconding, (ii) the April 2021 absconding violation was reversed and should not have counted as a prior significant violation under Policy 430.11, and (iii) the Department failed to consider mitigating circumstances, including the mitigation letter that Jake provided to the case-staffing committee.

### 1. Absconding

The term "absconding" is defined by statute to include that "the offender has not met supervision requirements, cannot be located with reasonable efforts, and has not made contact with Department staff within three days if convicted of a listed crime as defined in 13 V.S.A. § 5301(7) or seven days if convicted of an unlisted crime." 28 V.S.C. § 722(1). The statutory definition is satisfied here. There is no dispute that Jake failed to meet supervision requirements, having missed six scheduled appointments with his supervising officer between January 21 and February 10. The Department attempted to locate Jake by calling him, trying to locate him through GPS monitoring, visiting his approved residence, and leaving a card for him to report on February 26. Jake was not reachable at the number he had provided to the Department, did not have a functional GPS device, was not at his approved residence and could not be confirmed to

still be living there, and failed to report on February 26. The Department's efforts to locate Jake were reasonable. The record further supports the Department's conclusion that Jake did not make contact with the Department for more than three days because it is undisputed that Jake failed to contact or report to the Department between February 26, when he texted and called to apologize missing his appointment that day (his seventh missed appointment in just over a month), and June 16 when he was arrested.

### 2. Prior significant violations

Jake next argues that the Department abused its discretion by counting his 2021 violation as a prior significant violations under the sanctions grid.

Under Policy 430.11, the Department "shall consider any subsequent finding of a significant violation *within one year of a previous significant violation* at the next violation level," but "shall reset a supervised individual to violation level #1 . . . for the purposes of determining the sanction when the individual completes *one continuous year of community supervision without a significant violation.*" DOC Policy 430.11(G)(4), (5) (emphases added). These two categories are not mutually exclusive, at least where the two violations are separated by a period of incarceration. This definitional gap leaves the Department with discretion whether to increase the violation level if a prior significant violation occurred more than one calendar year earlier but the defendant has not successfully completed more than one continuous year of community supervision. *See Lethbridge v. Deml*, 24-CV-3200 (Apr. 16, 2025); *Sheehy v. Deml*, 24-CV-4995 (July 3, 2025).

The Department failed to exercise and thus abused its discretion here. The Department counted Jake's 2021 violation for absconding as a significant violation but failed to note Jake's successful appeal, which included a court finding that Jake "had not absconded," although he had failed to report to his supervising officer as directed. *See Buck v. Vt. Dep't of Corrections*, 25-CV-3374 (Dec. 3, 2021) (Mello, J.). The Department did not explain why this four-year old technical violation was deemed "significant" insofar that it was used to substantially increase Jake's furlough interruption.[2]

### 3. Mitigating factors

The court also concludes that the Department abused its discretion by failing to consider the mitigating-circumstances letter that Jake submitted to the case-staffing committee.

---

[2] To the extent Jake also argues the Department abused its discretion by giving him a "high" risk score, he has failed to present evidence apart from his borderline (but still high) score to support that argument. Given the deference due the Department on its risk assessment determinations, this argument fails. *See generally Norway v. Pallito*, No. 2010-166, 2010 WL 7789279 (Dec. 8, 2010) (unpub. three-justice entry order); *Benoit v. Vermont Dept. of Corrections*, No. 23-CV-02811, 2023 WL 9318524, at *3 (Vt. Super. Dec. 26, 2023) (Richardson, J.) (citing 28 V.S.A. §§ 1, 101(1), 102, 601, 721; *Plum Creek Maine Timberlands, LLC v. Vt. Dep't of Forests, Parks & Recreation*, 2016 VT 103, ¶ 30, 203 Vt. 197).

Policy 430.11 provides that the Department "may consider any aggravating or mitigating factors that could change the sanction selected," and that mitigating factors may include "[c]ircumstances in which behavior is predominantly motivated by substance use, and there was no significant impact on public safety." DOC Policy 430.11, at 12-13. "The presence of [a] . . . mitigating factor does not necessarily indicate the [case staffing] committee should impose an interrupt other than the interrupt duration recommended by the grid." *Id.* at 12.

Here, Jake testified without contradiction that he submitted a mitigating circumstances letter to the case-staffing committee, which explained among other things, that his violations were predominantly motivated by his relapse while on furlough. The case-staffing committee apparently did not consider this letter, which was not included in the Agency Record. This failure—even if unintentional—was an abuse of discretion.

## Order

The decision of the Department is REVERSED and the case is remanded to the Department to perform a new case staffing in accordance with this order.

Electronically signed on: 11/18/2025 pursuant to V.R.E.F. 9(d)

_____
Benjamin D. Battles
Superior Court Judge